{¶ 24} I write separately to set forth my views regarding the inference-upon-an-inference conundrum. In Hurt v. Charles J. RogersTransportation Co. (1955), 164 Ohio St. 329, upon which the Supreme Court relied in State v. Grant (1993), 67 Ohio St.3d 465, 478, the court cited, at 164 Ohio St. 332, as "[o]ne of the clearest statements of the rule pertaining to inferences upon inferences," the following passage from Indian Creek Coal Mining Co. v. Calvert, 68 Ind. App. 474,120 N.E. 709:
 {¶ 25} "There is a rule to that effect. It, however, is frequently misinterpreted and misapplied. For the purpose of supporting a proposition, it is not permissible to draw an inference from a deduction which is itself purely speculative and unsupported by an established fact. Where an inference not supported by or drawn from a proven or known fact is indulged, and is then used as a basis for another inference, neither inference has probative value. Such a process may be described as drawing an inference from an inference, and is not allowable. At the beginning of every line of legitimate inferences there must be a fact, known or proved. * * * Where there is such a fact, the proper tribunal is not only permitted, but also it is its duty, to draw therefrom those legitimate inferences that seem to be most reasonable. An inference so drawn becomes a fact in so far as concerns its relation to the proposition to be proved. It merges itself into the proved fact from which it was deduced, and the resulting augmented fact becomes a basis for other proper inferences. To assign to an inference properly drawn a position inferior to an established fact would in effect nullify its probative force."
 {¶ 26} This is consistent with the principle more recently set forth in State v. Jenks (1991), 61 Ohio St.3d 259, first paragraph of syllabus, 574 N.E.2d 492, that: "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof."
 {¶ 27} In Hurt, supra, at 164 Ohio St. 331-332, the Ohio Supreme Court cited approvingly the following passage from 1 Wigmore on Evidence (3 Ed.) 434, Section 1, which I find illuminating:
 {¶ 28} "It was once suggested that an `inference upon an inference' will not be permitted, i.e., that a fact desired to be used circumstantially must itself be established by testimonial evidence; that this suggestion has been repeated by several courts, and sometimes actually enforced.
 {¶ 29} "There is no such orthodox rule, nor can be. If there were, hardly a single trial could be adequately prosecuted. For example, on a charge of murder, the defendant's gun is found discharged; from this we infer that he discharged it, and from this we infer that it was his bullet which struck and killed the deceased. Or, the defendant is shown to have been sharpening a knife; from this we argue that he had a design to use it upon the deceased; and from this we argue that the fatal stab was a result of this design. In these and innumerable daily instances we build up inference upon inference, and yet no court (until in very modern times) ever thought of forbidding it. All departments of reasoning, all scientific work, every day's life and every day's trials, proceed upon such data. The judicial utterances that sanction the fallacious and impracticable limitation, originally put forward without authority, must be taken as valid only for the particular evidentiary facts therein ruled upon." (Emphasis in quotation in Hurt, supra.)
 {¶ 30} Perhaps most tellingly, and certainly the most succinctly, the following principle is cited approvingly in Hurt, supra, at 332-333: "In 20 American Jurisprudence, 169, Section 165, it is stated that, where a court seeks to apply the rule forbidding the basing of one inference upon another, the principle involved is that an inference can not be based upon evidence that is too uncertain or speculative or which raises merely a conjecture or possibility."
 {¶ 31} I take from all this the proposition that whether a factfinder may take an ultimate fact as proven, by the requisite burden of proof, based upon the conjunction[1] of two or more inferences, depends upon whether that conclusion is reasonable. In this situation, even if it would be reasonable to take an intermediate fact as proven from each inference, considered individually, it might not be reasonable to take an ultimate fact as proven, by the requisite burden of proof, from the two inferences considered conjointly. This follows from the fact that it is necessary, when two inferences are being used conjointly, to accept both inferences as true.
 {¶ 32} For example, in an invasion of privacy case, P must prove, by a preponderance of the evidence, that D was the person who made a harassing telephone call to her some time between 3:00 and 4:00 one afternoon. P can pin down the time to between 3 and 4 o'clock, because the phone call was received after her favorite soap opera had ended, but before she left for her work, at about 4 o'clock in the afternoon. The telephone used to make the call was in a locked room to which only two men, D and X, had access. Both D and X had virtually identical motives for harassing P. There is independent proof that D was in the room where the telephone was located from 3:00 to 3:45. At 3:45, D left the room and X entered it. On these facts, it is arguably reasonable to infer that D made the harassing phone call, since he had access to the telephone for threequarters of the time within which the call was made, and P is only required to prove that D made the call by a preponderance of the evidence; that is, that it is more likely than not that D made the call.
 {¶ 33} Suppose, however, that there was a second telephone in the house that D and X occupied, in a different room, not the locked room, and that four men, including D and X, had access to the second telephone. Suppose, further, that all of the men had virtually identical motives for harassing P. The records of the telephone company establish only that the call was made from one of the two telephones at the house occupied by the four men. Now the proof that D made the harassing phone call requires the conjunction of two inferences: that the call was made from the locked room, and that it was D, not X, who made the call. Perhaps it would be reasonable, viewed separately, to infer that the phone call was made from the telephone in the locked room, because one could reasonably suppose that the harassing caller would not want to risk being overheard by someone else in the room. Assuming, however, that that would be a weak, if nevertheless reasonable, inference when viewed separately, it is easy to see that the conjunction of the two inferences would be too weak to permit a reasonable jury to conclude, by a preponderance of the evidence, that D was the harassing caller.
 {¶ 34} On the other hand, if there was proof that only D had the key to the locked room, and if there were evidence from which it would be reasonable to infer that whoever made the harassing phone call would not have wanted to make the call from a phone where there was a risk of being overheard, then the conjunction of the two inferences would arguably be reasonable. What has changed? The inference that D made the call if the call was from the locked room is now very strong, since there is proof that D was the only person who had a key to the locked room. It is still inferential proof. There is no direct proof that D made the call. But it is sufficiently strong, when considered independently, that it can arguably suffice, when considered conjointly with the inference that the call was made from the locked room, to support proof, by a preponderance of the evidence, that D made the call.
 {¶ 35} What must Haughey prove in the case before us? First, she must prove that there was an object foreign to the food she was served; second, she must prove that the foreign object was the agency that caused her tooth to break, i.e., that it was a hard object and that her tooth contacting this hard object, other than the tooth being in a condition where even chewing soft food might result in its breaking, was the cause of the breakage; and third, that the foreign object causing her broken tooth was in the food as a result of Twin Group's negligent act or omission. There is some evidence tending to disprove the first element in this chain of proof. By her own admission, Haughey probed the food in her mouth with her tongue, but the only hard, nonfood object she encountered was a piece of her tooth.
 {¶ 36} The only fact that Haughey can prove directly, other than by inference, is that her tooth broke. Even though the breaking of a tooth is not a common occurrence when eating food, I agree that upon this record the chain of inferences upon which Haughey relies to prove her case is not sufficient to permit a reasonable factfinder to conclude, by a preponderance of the evidence, that Twin Group's negligence resulted in a foreign object's being present in the food it served to Haughey, and that the foreign object caused the breaking of Haughey's tooth.
 {¶ 37} Accordingly, I concur in the judgment of this court.
Wolff, J., concurs in concurring opinion.
[1] I distinguish a conjunction of two inferences — where the proof of the ultimate fact requires that both inferences be drawn — from a disjunction of two inferences — where the ultimate fact could be proven by either one of two inferences being drawn, independently of the other inference. Where two inferences are used disjunctively as circumstantial proof, even if each inference, standing alone, were too weak to permit a reasonable factfinder to find the ultimate fact, both inferences, together, might suffice. For example, A sells B some powder, representing it to be cocaine. The powder is not recovered. One possible inference is that the powder was, in fact, cocaine. Another possible inference that it was not cocaine. If there is some evidence tending to support the inference that it was not cocaine — evidence of a pattern of past dealings whereby A sells counterfeit cocaine to unsuspecting buyers, perhaps — the inference that the powder was cocaine might be too weak to permit a reasonable jury to find, beyond reasonable doubt, that A sold B a controlled substance. If that was the wording of the indictment, the evidence might be insufficient to support a conviction. However, if the indictment charged merely that A offered to sell cocaine to B, clearly there would be sufficient proof, since either inference would suffice, and, on these facts, one of the two inferences must be the case.